LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLE WILKINS and WILLOW JONES,<br><br>                    Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA; COUNTY OF ORANGE; MICHAEL MURRAY; LARRY YELLIN; WESLEY VANDIVER; JOSEPH MORRISON and DOES 1-10,<br><br>                    Defendants. | Case No.  8:20-cv-2417<br>**COMPLAINT FOR DAMAGES**<br>1.  Fabrication of Evidence/False Evidence Violations (42 U.S.C. § 1983)<br>2.  Conspiracy to Interfere with Civil Rights—Fabrication of Evidence/False Evidence Violations (42 U.S.C. § 1983)<br>3.  *Brady* Violations (42 U.S.C. § 1983)<br>4.  Conspiracy to Interfere with Civil Rights—*Brady* Violations (42 U.S.C. § 1983)<br>5.  Malicious Prosecution (42 U.S.C. § 1983)<br>6.  Municipal Liability – Ratification (42 U.S.C. § 1983)<br>7.  Municipal Liability – Inadequate Training (42 U.S.C. § 1983)<br>8.  Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>9.  False Imprisonment<br>10. Negligence<br>11. Intentional Infliction of Emotional Distress<br>12. Loss of Consortium<br>13. Violation of Cal. Civil Code § 52.1<br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES

**COMPLAINT FOR DAMAGES**

COME NOW Plaintiffs COLE WILKINS and WILLOW JONES for their Complaint against Defendants STATE OF CALIFORNIA, COUNTY OF ORANGE, MICHAEL MURRAY, LARRY YELLIN, WESLEY VANDIVER, JOSEPH MORRISON and Does 1-10, inclusive, and allege as follows:

**INTRODUCTION**

1.      This case arises from the wrongful conviction of COLE WILKINS and the related fabrication of false evidence and *Brady* violations committed by the Defendants.  As a result of the Defendants' destruction of initial CHP traffic reports containing exculpatory evidence and the Defendants' fabrication of false CHP traffic reports, COLE WILKINS was wrongfully convicted of first-degree murder and incarcerated for approximately thirteen years for what ultimately became an involuntary manslaughter conviction carrying a maximum sentence of four years.

**JURISDICTION AND VENUE**

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because WILKINS asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

COMPLAINT FOR DAMAGES

**PARTIES**

4.      Plaintiff COLE WILKINS ("WILKINS") is and was at all relevant times an individual residing in the City of Long Beach, California.  WILKINS seeks damages under federal and state law, as well as attorneys' fees.

5.      Plaintiff WILLOW JONES ("JONES") is an individual residing in the City of Long Beach, California.  JONES seeks damages under state law for her loss of consortium.

6.      At all relevant times, Defendant COUNTY OF ORANGE ("COUNTY") is and was a municipal corporation existing under the laws of the State of California.  COUNTY is a chartered subdivision of the State of California with the capacity to be sued.  COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Orange County District Attorney's Office ("OCDA") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the OCDA and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, COUNTY was the employer of Defendants MICHAEL MURRAY, LARRY YELLIN, and DOES 1-6.

7.      At all relevant times, Defendant MICHAEL MURRAY ("MURRAY") was a prosecutor for the OCDA.  At all relevant times, Defendant MURRAY was acting under color of state law and within the scope of his duties as a prosecutor for the OCDA.  Defendant MURRAY was acting with the complete authority and ratification of his principal, Defendant COUNTY, at all relevant times.

8.      At all relevant times, Defendant LARRY YELLIN ("YELLIN") was a prosecutor for the OCDA.  At all relevant times, Defendant YELLIN was acting under color of state law and within the scope of his duties as a prosecutor for the OCDA.  Defendant YELLIN was acting with the complete authority and ratification of his principal, Defendant COUNTY, at all relevant times.

COMPLAINT FOR DAMAGES

9.    At all relevant times, Defendant WESLEY VANDIVER ("VANDIVER") was an investigator for the OCDA.  At all relevant times, Defendant VANDIVER was acting under color of state law and within the scope of his duties as an investigator for the OCDA.  Defendant VANDIVER was acting with the complete authority and ratification of his principal, Defendant COUNTY, at all relevant times.

10.    Defendants DOES 1-3 ("OCDA DOES") are OCDA investigators, attorneys/prosecutors, and other employees.  OCDA DOES were acting under color of state law within the course and scope of their duties at all relevant times.  OCDA DOES were acting with the complete authority and ratification of their principal, Defendant COUNTY, at all relevant times.

11.    Defendants DOES 4-6 ("OCDA SUPERVISORY DOES") are OCDA employees with supervisory and managerial authority.  OCDA SUPERVISORY DOES were acting under color of state law within the course and scope of their duties at all relevant times.  OCDA SUPERVISORY DOES were acting with the complete authority and ratification of their principal, Defendant COUNTY, at all relevant times.

12.    At all relevant times, Defendant STATE OF CALIFORNIA ("STATE") is and was a municipal corporation existing under the laws of the State of California.  STATE is a chartered subdivision of the State of California with the capacity to be sued.  STATE is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the California Highway Patrol ("CHP") and its agents and employees.  At all relevant times, Defendant STATE was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the CHP and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, STATE was the employer of Defendants JOSPEH MORRISON and DOES 7-10.

-3-

13.     At all relevant times, Defendant JOSPEH MORRISON ("MORRISON") was a sergeant for the CHP.  At all relevant times, Defendant MORRISON was acting under color of state law and within the scope of his duties as a sergeant for the CHP.  Defendant MORRISON was acting with the complete authority and ratification of his principal, Defendant STATE, at all relevant times.

14.     Defendants DOES 7-10 ("CHP DOES") are CHP employees who were acting under color of state law and within the course and scope of their duties as employees of the CHP.  At all relevant times, CHP DOES were acting with the complete authority and ratification of their principal, Defendant STATE.

15.     On information and belief, Defendants MURRAY, YELLIN, VANDIVER, MORRISON and DOES 1-10 were residents of the COUNTY.

16.     In doing the acts and failing and omitting to act as hereinafter described, Defendants MURRAY, YELLIN, VANDIVER, and DOES 1-6 were acting on the implied and actual permission and consent of the COUNTY.

17.     In doing the acts and failing and omitting to act as hereinafter described, Defendants MORRISON and DOES 7-10 were acting on the implied and actual permission and consent of the STATE.

18.     The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names.  Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

19.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

COMPLAINT FOR DAMAGES

20.    All of the acts complained of herein by Plaintiffs against Defendants
were done and performed by said Defendants by and through their authorized
agents, servants, and/or employees, all of whom at all relevant times herein were
acting within the course, purpose, and scope of said agency, service, and/or
employment capacity.  Moreover, Defendants and their agents ratified all of the acts
complained of herein.

21.    Defendants MURRAY, YELLIN, VANDIVER, MORRISON and
DOES 1-10 are sued in their individual capacity.

22.    On or around July 6, 2017, Plaintiffs filed comprehensive and timely
claims for damages with the County of Orange and the State of California pursuant
to applicable sections of the California Government Code.  The County of Orange
rejected Plaintiffs' claims on September 15, 2020, and the State rejected Plaintiffs'
claims on July 20, 2020.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

23.    Plaintiffs repeat and re-allege each and every allegation in the
foregoing paragraphs of this Complaint with the same force and effect as if fully set
forth herein.

24.    On July 7, 2006, WILKINS was driving westbound on the 91 Freeway
in Anaheim with stolen kitchen appliances in the back of his truck.  WILKINS had
driven approximately 60 miles from a location in Riverside County when a boxed
stove fell from the back of his truck onto the freeway at approximately 5:00 a.m. on
that date.  When the stove fell off the truck, WILKINS was travelling in the number
two lane at approximately 55 to 60 miles per hour.

25.    WILKINS was unaware that the stove had fallen off the back of his
truck until he stopped in a parking lot after a motorist on the freeway, D. Lay,
directed him to pull over.  Unbeknownst to WILKINS, D. Lay's vehicle had briefly

1    collied with the stove.  When D. Lay informed WILKINS that the stove had fallen

2    from his truck, WILKINS was surprised.

3          26.    D. Piquette ("Piquette"), a former Riverside County sheriff's deputy,

4    swerved sharply to the right to avoid the stove, veered across the freeway, and

5    collided with a cement truck.  The cement truck flipped over and landed on

6    Piquette's car, crushing him to death ("the fatal collision").  Motorists C. Thomas

7    and R. Howard also briefly collied with the stove on the freeway in their separate

8    vehicles.  Several other drivers swerved to avoid the stove on the freeway without

9    incident, and only the four aforementioned collisions (D. Lay, C. Thomas, R.

10   Howard, and D. Piquette) were reported.

11         27.    Shortly after the collisions occurred, CHP officers prepared traffic

12   reports relating to each of the four collisions.  Each traffic report identified the

13   primary collision factor ("PCF") of each collision.  At least two investigating CHP

14   officers, including CHP Officer John Heckenkemper ("Heckenkemper"), opined that

15   the four collisions related to the stove, including the fatal collision, were not caused

16   by WILKINS; rather, they were caused by the errant driving of other motorists who

17   either struck or took evasive action to avoid the stove.  Importantly, the original

18   CHP traffic report pertaining to the fatal collision indicated that Piquette's driving

19   was the primary cause of the fatal collision.  In other words, the CHP initially

20   concluded and documented that WILKINS was not the PCF of the fatal collision.

21         28.    Shortly after the collisions, Heckenkemper wrote a report that

22   identified the PCF of the second collision relating to the stove.  Heckenkemper

23   opined that the driver involved in the second collision, R. Howard, was at fault,

24   concluding that R. Howard was driving too fast for the conditions.  Heckenkemper

25   submitted his report, and a reviewing officer in the CHP Accident Investigation Unit

26   ("AIU") signed off on the report.  After Heckenkemper's report was finalized and

27   approved by the AIU, MORRISON changed Heckenkemper's report.  MORRISON

28   told Heckenkemper that he had destroyed his report and changed the PCF to "other

COMPLAINT FOR DAMAGES

than driver" because WILKINS was being charged with felony murder, and law enforcement wanted the PCFs in the three collisions to be consistent. Heckenkemper did not approve or agree with the changes made to his report. Heckenkemper told CHP investigator VANDIVER that his report had been changed and that he did not agree with MORRISON's PCF.  VANDIVER responded, "I don't want to hear about it," or words to that effect.

29.    CHP supervisor MORRISON also altered the traffic report regarding the fatal collision to reverse the conclusion that Piquette's driving was the PCF. MORRISON shredded the initial CHP traffic reports.  WILKINS was unaware of the initial CHP traffic reports and their exculpatory opinions until long after his first trial conviction.

30.    It is against CHP policy to change a PCF without consulting with the officer who wrote the report, and it is against CHP policy to change a report after an officer from the AIU has signed off on the report.

31.    On July 13, 2006, the prosecution filed a complaint against WILKINS, alleging a violation of California Penal Code §187 (murder).  On October 30, 2006, the prosecution filed the Information, alleging the same charge.  A jury trial commenced on April 17, 2008 ("the first trial").  At the first trial, the prosecution charged WILKINS with first degree murder under the felony-murder rule.

32.    On information and belief, the prosecution, including the OCDA defendants, would not have pursued a first-degree murder charge against WILKINS had Piquette not been a member of law enforcement.

33.    The felony-murder rule provides that "[a]ll murder . . . which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, [or] train wrecking . . . is murder of the first degree." California Penal Code §189.  "Under the felony-murder rule, a strict causal or temporal relationship between the felony and the murder is not required; what is required is proof beyond a reasonable doubt that the felony and murder were part of

one continuous transaction.  [Citation.]  This transaction may include a defendant's flight after the felony to a place of temporary safety." *People v. Young*, 34 Cal. 4th 1149, 1175 (2005).  "A killing committed by a robber during his or her flight from the scene of the crime, and before reaching a place of temporary safety, comes within section 189." *People v. Pulido*, 15 Cal. 4th 713, 723, fn. 3 (1997) (citing *People v. Salas*, 7 Cal. 3d 812, 820-24 (1972)); *see also People v. Boss*, 210 Cal. 245, 290 (1930).

34.     At the first trial, the court instructed the jury that in order for the felony-murder rule to apply, the burglary and the act causing the death must be part of one "continuous transaction." *See* CALCRIM No. 549.  WILKINS' requested the trial court to instruct the jury that, for purposes of felony murder, the felony continues only until the perpetrator has reached a place of temporary safety.  *See* CALCRIM No. 3261.  CALCRIM No. 3261 reads: "The crime of burglary continues until the perpetrator has actually reached a temporary place of safety. The perpetrator has reached a temporary place of safety if he has successfully escaped from the scene, is no longer being chased [, and has unchallenged possession of the property]."  This is known as the "escape rule."  The trial court denied WILKINS' request that the jury be instructed on the "escape rule."

35.     The "continuous transaction" doctrine and the escape rule are two related but distinct doctrines.  The escape rule is "used in felony-murder cases to determine when a killing is so closely related to an underlying felony as to justify an enhanced punishment for the killing." *People v. Bigelow*, 37 Cal. 3d 731, 753 (1984).  "Under this test . . . the crime continues until the criminal has reached a place of temporary safety." *Id*.

36.     While the first trial was in progress, former CHP Chief Steven Beeuwsaert told MURRAY about the changed traffic reports.  MURRAY told Chief Beeuwsaert that it did not matter because WILKINS was a fleeing felon, and

COMPLAINT FOR DAMAGES

MURRAY intended to pursue a conviction against WILKINS under the felony-murder rule.

37.    On May 5, 2008, a jury convicted WILKINS of first-degree murder under the felony-murder theory that the fatal collision involving Piquette occurred in the commission of a burglary.  On July 11, 2008, WILKINS was sentenced to 26 years to life in prison.

38.    WILKINS appealed his conviction, arguing that the trial court erred when it refused to instruct the jury pursuant to CALCRIM No. 3261 as discussed above.  On January 7, 2011, the California Court of Appeal in *People v. Wilkins*, 191 Cal. App. 4th 780 (2011) affirmed the trial court's ruling.

39.    The California Supreme Court granted review of the appellate court's decision on May 11, 2011, superseding the opinion of the Court of Appeal.  The California Supreme Court's review pertained to the issue of whether the trial court should have instructed the jury, as WILKINS requested, on the theory that a homicide and an underlying felony do not constitute one continuous transaction for purposes of the felony-murder rule if the defendant has escaped to a place of temporary safety before the homicide takes place, pursuant to CALCRIM No. 3261. *See People v. Wilkins*, 251 P.3d 940 (2011).

40.    On March 7, 2013, the California Supreme Court reversed the opinion of the Court of Appeal and remanded the case for further proceedings consistent with its opinion.  The California Supreme Court's opinion held that: (1) the escape rule establishes the outer limit of the "continuous transaction" theory of felony murder liability for killing during flight; (2) sufficient evidence required a jury instruction on the escape rule; and (3) the failure to instruct the jury on the escape rule was not harmless error.  *People v. Wilkins*, 56 Cal. 4th 333 (2013).  The California Supreme Court reasoned that WILKINS was at least 60 miles away from the scene of the burglary when the stove fell off his truck and that he had been driving on the freeway at normal speeds for about an hour before the stove fell off.

1    In other words, a reasonable jury could have concluded that WILKINS had reached

2    a place of temporary safety before the fatal collision.  The California Supreme Court

3    found that the instruction that the first trial court gave on the "continuous

4    transaction" element of felony murder was—in absence of an instruction on the

5    escape rule—incomplete and misleading.  *Id.* at 349.  Nothing in the instruction

6    given by the first trial court informed the jury that there was any rule it must apply

7    in determining whether the felony and the fatal act were part of one continuous

8    transaction or in determining whether WILKINS' flight had ended.  As the

9    California Supreme Court held, there "is more than an abstract possibility that the

10   instructional error affected the verdict in [WILKINS'] case."  *Id.* at 351.

11       41.    Prior to the retrial, WILKINS discovered that CHP officers had

12   destroyed and altered their original traffic collision reports as described above.  The

13   prosecution had failed to disclose this exculpatory evidence, and on July 10, 2015,

14   WILKINS filed a motion to recuse the OCDA, alleging outrageous government

15   conduct.  Upon issuance of an alternative writ, the California Court of Appeal

16   ordered the trial court to conduct an evidentiary hearing.  At the conclusion of the

17   evidentiary hearing, former Superior Court Judge Thomas Goethals, who presided

18   over the retrial, ruled that MURRAY committed serious misconduct by not

19   disclosing the falsification of the traffic report.  As a sanction, Judge Goethals

20   excluded felony murder as theory of liability during the retrial.  Judge Goethals

21   found: "An opinion expressed in writing by a veteran CHP officer that [WILKINS']

22   conduct was not the [PCF] in this fatal collision was without question *Brady*

23   material . . . [WILKINS] should have received the exculpatory material contained in

24   the destroyed reports prior to his first trial pursuant to the *Brady* discovery rule.

25   Instead, the evidence was suppressed and later destroyed."  *People v. Wilkins*, 2020

26   WL 64715 (Jan. 7, 2020) (quoting Super. Ct. No. 06NF2339).  This left the

27   prosecution with the more traditional "implied malice" homicide, during which a

28   causational jury instruction must be given.

-10-

42.    Judge Goethals also recused MURRAY and YELLIN from the retrial, finding that both prosecutors were deeply involved in the case when the misconduct occurred, YELLIN as the case filer and the prosecutor who presented the matter on behalf of the People at the preliminary hearing, and MURRAY as the trial prosecutor.

43.    The retrial against WILKINS began on or around August 17, 2017.  At the conclusion of the retrial, a jury found WILKINS guilty of second-degree murder under an implied malice theory.  On October 27, 2017, WILKINS' sentence was reduced from "26 years to life in prison" to "16 years to life in prison."  WILKINS again appealed the jury's verdict.

44.    On January 7, 2020, a panel sitting for the Fourth District Court of Appeal in Santa Ana ruled that the jurors at the retrial did not have enough evidence to prove that WILKINS' actions contained the implied malice needed to qualify for a second-degree murder conviction.  The implied malice theory requires proof that the actions were committed by a person who knows that his conduct endangers the life of another and that the person acts with a conscious disregard of that danger to human life.  There was no evidence that WILKINS was speeding, making abrupt lane changes, or otherwise driving dangerously.  Thus, the panel modified the judgment to involuntary manslaughter, which carries a maximum sentence of four years.

45.    On March 10, 2020, WILKINS was resentenced to four years for the involuntary manslaughter conviction.  By that time, WILKNS had served approximately 13 years in prison for what was ultimately a four-year sentence.

46.    As a result of the Defendants' violations and misconduct described herein, WILKINS suffered damages, including mental and emotional distress, loss of liberty, damage to reputation, and loss of past and future earnings.  Additionally, JONES and WILKINS each suffered a loss of consortium.

COMPLAINT FOR DAMAGES

# **FIRST CLAIM FOR RELIEF**

**Deprivation of Civil Rights—Fabrication of Evidence/False Evidence Violations (42 U.S.C. § 1983 and the Fourteenth Amendment)**

(By WILKINS against Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10)

47.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

48.    Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10, while acting under color of state law, deprived WILKINS of his civil rights, more particularly, his right to due process of law, by providing false and/or fabricated evidence in the CHP traffic collision reports, destroying the initial CHP traffic collision reports opining that WILKINS was not the PCF of the fatal collision, and otherwise fabricating and concealing evidence that resulted in the deprivation of WILKINS' liberty.

49.    By destroying the initial CHP traffic reports that contained exculpatory evidence and by fabricating new traffic reports that identified WILKINS as the PCF of the collisions with the stove, MORRISON and VANDIVER set in motion a reasonably foreseeable chain of events that led to (1) the presentation of false and fabricated evidence, faulty jury instructions, and the felony-murder rule at WILKINS' first trial, and (2) WILKINS' first-degree murder conviction and subsequent 13-year incarceration.

50.    By presenting at the first trial the CHP traffic reports that were altered to identify WILKINS as the PCF of the collisions with the stove, MURRAY and YELLIN fabricated false evidence and concealed exculpatory information.  Each of the individual Defendants failed to correct this fabrication and concealment even when Heckenkemper informed MURRAY and VANDIVER during the ongoing first trial that he did not agree with the changes that were made to his traffic report.

51. Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 knew that the initial CHP accident reports did not identify WILKINS as the PCF of the collisions with the stove and knew that the altered CHP reports presented at the first trial were false and fabricated. After WILKINS was convicted of first-degree murder at the first trial, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 failed to take action to rectify WILKINS' wrongful first-degree murder conviction.

52. Defendants' conduct was done with deliberate indifference to and/or reckless disregard of WILKINS' rights and disregard for the truth. The fabricated and false CHP traffic reports were used to convict WILKINS of first-degree murder under the felony-murder rule in 2008. As a direct result, WILKINS was sentenced to 26 years to life in prison and was incarcerated for 13 years.

53. The constitutional source against using false evidence is primarily the due process clause of the Fourteenth Amendment, and WILKINS' due process rights were violated by the conduct alleged herein. WILKINS brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of WILKINS' right to be free from false evidence being used against him that led to a false and wrongful conviction, is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), then this claim is brought on those bases as well.

54. Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 were each jointly and severally responsible to not use false evidence against WILKINS. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

55. As a direct and proximate result of the aforementioned conduct, WILKINS was wrongfully convicted and incarcerated for over 13 years for what

1  was ultimately reduced to a four-year sentence and thereby suffered a loss of liberty,

2  loss of past and future earnings, loss of consortium and severe emotional and mental

3  distress.

4        56.    The conduct of Defendants MURRAY, YELLIN, MORRISON,

5  VANDIVER and DOES 1-10 was willful, wanton, malicious, and done with an evil

6  motive and intent and a reckless disregard for the rights and safety of WILKINS and

7  therefore warrants the imposition of exemplary and punitive damages.

8        57.    WILKINS brings this claim individually and seeks general and special

9  damages in an amount to be determined at trial.  WILKINS also seeks reasonable

10  costs and attorneys' fees under 42 U.S.C. § 1988.

11

12                    **SECOND CLAIM FOR RELIEF**

13   **Conspiracy to Interfere with Civil Rights—Fabrication of Evidence/False**

14              **Evidence Violations (42 U.S.C. § 1983)**

15        (By WILKINS against Defendants MURRAY, YELLIN, MORRISON,

16                    VANDIVER and DOES 1-10)

17        58.    Plaintiffs repeat and re-allege each and every allegation in the

18  foregoing paragraphs of this Complaint with the same force and effect as if fully set

19  forth herein.

20        59.    As investigators, sergeants and prosecutors assigned to WILKINS'

21  case, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10

22  were jointly and severally responsible not to use false and/or fabricated evidence.

23        60.    Defendants MURRAY, YELLIN, MORRISON, VANDIVER and

24  DOES 1-10, while acting under color of state law, acted in concert, conspired and

25  agreed to deprive WILKINS of rights, privileges, or immunities secured by the

26  Constitution and laws of the United States, in particular the right not to have false

27  evidence used against him.  This false evidence led to a false and wrongful first-

28  degree murder conviction, as elaborated above.  The fabrication and use of false

COMPLAINT FOR DAMAGES

evidence, the failure to correct or identify false evidence to the prosecution or defense, and other actions related to the use of such evidence, constitutes an overt act in furtherance of said conspiracy.  There was an agreement or meeting of the minds to violate WILKINS' constitutional rights.  Alternatively, as joint actors with joint obligations, each individual Defendant was and is responsible for the failures and omissions of each other.

61.    Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 knew that the initial CHP reports did not identify WILKINS as the PCF of the collisions with the stove and that the evidence presented at trial was false and/or fabricated.  After WILKINS was convicted of first-degree murder in 2008, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 failed to take action to rectify WILKINS' wrongful conviction.  WILKINS remained incarcerated until March 2020.

62.    Defendants' conduct was done with deliberate indifference to and/or reckless disregard of WILKINS' rights and reckless disregard for the truth.  The fabricated CHP traffic collision reports that were presented at trial were used to convict WILKINS of first-degree murder under the felony-murder rule.

63.    As a direct and proximate result of the aforementioned conduct, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, past and future earnings, loss of consortium and emotional distress.

64.    The conduct of Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of WILKINS and therefore warrants the imposition of exemplary and punitive damages.

65.    WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.  WILKINS also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

1            **THIRD CLAIM FOR RELIEF**

2       **Deprivation of Civil Rights—*Brady* Violations (42 U.S.C. § 1983)**

3      (By WILKINS against Defendants MURRAY, YELLIN, MORRISON,

4                  VANDIVER and DOES 1-10)

5      66.    Plaintiffs repeat and re-allege each and every allegation in the

6 foregoing paragraphs of this Complaint with the same force and effect as if fully set

7 forth herein.

8      67.    Defendants MURRAY, YELLIN, MORRISON, VANDIVER and

9 DOES 1-10, while acting under color of state law, deprived WILKINS of his civil

10 rights by failing to produce and/or present material exculpatory and impeachment

11 evidence and information as required by *Brady v. Maryland*, 373 U.S. 83 (1963)

12 (hereinafter *Brady* information).

13      68.    The *Brady* violations asserted herein encompass MORRISON'S and

14 VANDIVER'S fabrication of CHP traffic collision reports identifying WILKINS as

15 the PCF in the collisions with the stove, including the fatal collision, as well as

16 MORRISON'S and VANDIVER'S destruction of the initial CHP traffic collision

17 reports.  The *Brady* violations asserted herein also encompass MURRAY'S and

18 YELLIN'S refusal to present the exculpatory evidence at trial, even after

19 Heckenkemper brought this to MURRAY'S attention during the trial.

20      69.    Defendants MURRAY, YELLIN, MORRISON, VANDIVER and

21 DOES 1-10 knew that the initial CHP reports did not identify WILKINS as the PCF

22 of the collisions with the stove and that the reports had been altered.  Nonetheless,

23 Defendants failed to disclose the initial reports, which contained exculpatory

24 opinions.  The fabricated CHP traffic collision reports that were presented at the first

25 trial were used to convict WILKINS of first-degree murder under the felony-murder

26 rule.  After WILKINS was convicted of first degree murder in 2008, Defendants

27 MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 failed to take

28

action to rectify WILKINS' wrongful first-degree murder conviction, which they knew or should have known was not supported by the initial CHP traffic reports.

70.    The constitutional source of the obligation to provide *Brady* information is primarily the due process clause of the Fourteenth Amendment, and WILKINS' due process rights were violated by the conduct alleged herein. WILKINS brings this claim as both a procedural and a substantive due process violation.  To the extent that any court were to conclude that the source of WILKINS' right to *Brady* information is a constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

71.    VANDIVER and MORRISON were jointly and severally responsible to provide *Brady* information to MURRAY and YELLIN so that it could be in turn provided to WILKINS' defense team.  YELLIN and MURRAY were jointly and severally responsible to provide *Brady* information to the jury.  Each individual Defendant engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

72.    As a direct and proximate result of the aforementioned conduct, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, loss of past and future earnings, loss of consortium and severe emotional and mental distress.

73.    Defendants' conduct was done with deliberate indifference to and/or reckless disregard of WILKINS' rights and in reckless disregard for the truth.

74.    The conduct of Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of WILKINS and therefore warrants the imposition of exemplary and punitive damages.

COMPLAINT FOR DAMAGES

75.    WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.  WILKINS also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

### Conspiracy to Interfere with Civil Rights – *Brady* Violations (42 U.S.C. § 1983)

(By WILKINS against Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10)

76.    Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

77.    Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10, while acting under color of state law, deprived WILKINS of his civil rights by failing to produce and/or present to the jury the *Brady* information described above.

78.    Defendants, while acting under color of state law, acted in concert, conspired and agreed to deprive WILKINS of rights, privileges, or immunities secured by the Constitution and laws of the United States, in particular the right to have *Brady* information of which they were aware provided to YELLIN and MURRAY.  Each failure to provide *Brady* information to MURRAY and YELLIN, as well as other actions related to them, constitutes an overt act in furtherance of said conspiracy.  In other words, there was an agreement or meeting of the minds to violate WILKINS' constitutional rights.

79.    As indicated above, the *Brady* violations asserted herein encompass MORRISON'S and VANDIVER'S fabrication of CHP traffic collision reports identifying WILKINS as the PCF in the collisions with the stove, including the fatal collision, as well as MORRISON'S and VANDIVER'S destruction of the initial

CHP traffic collision reports.  The *Brady* violations asserted herein also encompass MURRAY'S and YELLIN'S refusal to present the exculpatory evidence at trial, even after Heckenkemper brought this to MURRAY'S attention during the trial.

80.     Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 knew that the initial CHP reports did not identify WILKINS as the PCF of the collisions with the stove and that the reports had been altered.  Nonetheless, Defendants failed to disclose the initial reports, which contained exculpatory opinions.  The fabricated CHP traffic collision reports that were presented at trial were used to convict WILKINS of first-degree murder under the felony-murder rule.  After WILKINS was convicted of first degree murder in 2008, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 failed to take action to rectify WILKINS' wrongful conviction.

81.     The constitutional source of the obligation to provide *Brady* information is primarily the due process clause of the Fourteenth Amendment, and WILKINS' due process rights were violated by the conduct alleged herein.  WILKINS brings this claim as both a procedural and a substantive due process violation.  To the extent that any court were to conclude that the source of WILKINS' right to *Brady* information is a constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

82.     VANDIVER and MORRISON were jointly and severally responsible to provide *Brady* information to MURRAY and YELLIN so that it could be in turn provided to WILKINS' defense team.  YELLIN and MURRAY were jointly and severally responsible to provide *Brady* information to the jury.  Each individual Defendant engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

COMPLAINT FOR DAMAGES

83.    As a direct and proximate result of the aforementioned conduct, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, loss of past and future earnings, loss of consortium, and severe emotional and mental distress.

84.    Defendants' conduct was done with deliberate indifference to and/or reckless disregard of WILKINS' rights and in reckless disregard for the truth.

85.    The conduct of Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of WILKINS and therefore warrants the imposition of exemplary and punitive damages.

86.    WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.  WILKINS also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF
### Malicious Prosecution (42 U.S.C. § 1983)
(By WILKINS against Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10)

87.    Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

88.    Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10, while acting under color of state law, deprived WILKINS of his civil rights, more particularly, his right to be free from malicious prosecution.

89.    With respect to the first trial, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 contributed to, caused, or initiated a criminal prosecution against WILKINS with malice and/or with the purpose of depriving him of his constitutional rights.  Defendants did not have probable cause

COMPLAINT FOR DAMAGES

1  to prosecute WILKINS for first-degree murder and did not have sufficient evidence

2  to pursue the felony-murder theory.

3        90.    The prosecution for first-degree murder ultimately terminated in

4  WILKINS' favor, with his 2008 conviction for first-degree murder being overturned

5  in 2017 as described above.

6        91.    Defendants MURRAY, YELLIN, MORRISON, VANDIVER and

7  DOES 1-10 knew that the initial CHP reports did not identify WILKINS as the PCF

8  of the collisions with the stove and that the reports had been altered.  Nonetheless,

9  Defendants failed to disclose the initial reports, which contained exculpatory

10  opinions.  The fabricated CHP traffic collision reports that were presented at the first

11  trial were used to convict WILKINS of first-degree murder under the felony-murder

12  rule.  After WILKINS was convicted of first-degree murder in 2008, Defendants

13  MURRAY, YELLIN, MORRISON, VANDIVER and DOES 1-10 failed to take

14  action to rectify WILKINS' wrongful conviction.

15        92.    The constitutional source of the prohibition against malicious

16  prosecution is primarily the due process clause of the Fourteenth Amendment, and

17  WILKINS' due process rights were violated by the conduct alleged herein.

18  WILKINS brings this claim as both a procedural and a substantive due process

19  violation.  To the extent that any court were to conclude that the source of

20  WILKINS' right to be free from malicious prosecution is a constitutional source

21  other than due process (such as the Fourth Amendment or Sixth Amendment right to

22  a fair trial), then this claim is brought on those bases as well.

23        93.    VANDIVER and MORRISON were jointly and severally responsible

24  to provide *Brady* information to MURRAY and YELLIN so that it could be in turn

25  provided to WILKINS' defense team.  YELLIN and MURRAY were jointly and

26  severally responsible to provide *Brady* information to the jury.  Each individual

27  Defendant engaged in, knew or should have known of the unconstitutional conduct

28

-21-

1  alleged herein and failed to prevent it, which each had a responsibility to do, and
2  each ratified, approved or acquiesced in it.

3          94.    As a direct and proximate result of the aforementioned conduct,
4  WILKINS was wrongfully convicted and incarcerated for over 13 years and
5  suffered a loss of liberty, loss of past and future earnings, loss of consortium and
6  severe emotional and mental distress.

7          95.    Defendants' conduct was done with deliberate indifference to and/or
8  reckless disregard of WILKINS' rights and in reckless disregard for the truth.

9          96.    The conduct of Defendants MURRAY, YELLIN, MORRISON,
10 VANDIVER and DOES 1-10 was willful, wanton, malicious, and done with an evil
11 motive and intent and a reckless disregard for the rights and safety of WILKINS and
12 a reckless disregard for the truth, and therefore warrants the imposition of
13 exemplary and punitive damages.

14         97.    WILKINS brings this claim individually and seeks general and special
15 damages in an amount to be determined at trial.  WILKINS also seeks reasonable
16 costs and attorneys' fees under 42 U.S.C. § 1988.

17

18               **<u>SIXTH CLAIM FOR RELIEF</u>**

19          **Municipal Liability – Ratification (42 U.S.C. § 1983)**

20  (By WILKINS against Defendants COUNTY and OCDA SUPERVISORY DOES)

21         98.    Plaintiffs repeat and re-allege each and every allegation in the prior
22 paragraphs of this Complaint with the same force and effect as if fully set forth
23 herein.

24         99.    At all relevant times, Defendants MURRAY, YELLIN, MORRISON,
25 VANDIVER and OCDA DOES acted under color of state law.

26         100.   The acts of Defendants MURRAY, YELLIN, MORRISON,
27 VANDIVER and OCDA DOES deprived WILKINS of his rights under the United
28 States Constitution.

101.   Upon information and belief, a final policymaker, acting under color of state law, who had final policymaking authority concerning the acts of Defendants MURRAY, YELLIN, MORRISON, VANDIVER and OCDA DOES, ratified (or will ratify) the acts of the individual Defendants and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) the acts of the individual Defendants.

102.   Upon information and belief, a final policymaker has determined (or will determine) that the acts of the individual Defendants were "within policy."

103.   On information and belief, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and OCDA DOES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the deprivation of WILKINS' civil rights.

104.   By reason of the aforementioned acts and omissions, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, loss of past and future earnings, loss of consortium and severe emotional and mental distress.

105.   Accordingly, Defendants COUNTY and OCDA SUPERVISORY DOES each are liable to WILKINS for compensatory damages under 42 U.S.C. § 1983.

106.   WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.  WILKINS also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

**<u>SEVENTH CLAIM FOR RELIEF</u>**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(Against Defendants COUNTY and OCDA SUPERVISORY DOES)

107.   Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

108.   At all relevant times, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and OCDA DOES acted under color of state law.

109.   The acts of Defendants MURRAY, YELLIN, MORRISON, VANDIVER and OCDA DOES deprived WILKINS of his rights under the United States Constitution.

110.   The training policies of Defendant COUNTY were not adequate to train its attorneys, investigators and other employees to handle the usual and recurring situations with which they must deal.

111.   Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its employees adequately, including training with respect to not creating and presenting at trial false and fabricated evidence.

112.   The failure of Defendant COUNTY and OCDA SUPERVISORY DOES to provide adequate training caused the deprivation of WILKINS' rights; that is, the defendants' failure to train is so closely related to the deprivation of WILKINS' rights as to be the moving force that caused the ultimate injuries.

113.   By reason of the aforementioned acts and omissions, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, loss of past and future earnings, loss of consortium and severe emotional and mental distress.

114.   Accordingly, Defendants COUNTY and OCDA SUPERVISORY DOES each are liable to WILKINS for compensatory damages under 42 U.S.C. § 1983.

COMPLAINT FOR DAMAGES

115.   WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.  WILKINS also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

### EIGHTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Against Defendants COUNTY and OCDA SUPERVISORY DOES)

116.   Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

117.   At all relevant times, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and OCDA DOES acted under color of state law.

118.   The acts of Defendants MURRAY, YELLIN, MORRISON, VANDIVER and OCDA DOES deprived WILKINS of his rights under the United States Constitution.

119.   Defendants MURRAY, YELLIN, MORRISON, VANDIVER and OCDA DOES acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant COUNTY.

120.   On information and belief, Defendants MURRAY, YELLIN, MORRISON, VANDIVER and OCDA DOES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the violations of WILKINS' rights.

121.   Defendants COUNTY and OCDA SUPERVISORY DOES, together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

   a.   The knowing and/or deliberately indifferent presentation of false evidence by prosecutors, investigators and other OCDA employees and agents;

     b.  The fabrication and presentation of false evidence by prosecutors, investigators, and other OCDA employees and agents in reckless disregard for the truth or the rights of the accused;

     c.  The failure of OCDA prosecutors, investigators and other OCDA employees and agents to disclose exculpatory evidence;

     d.  The failure to adequately train, supervise and control OCDA employees and agents, including with respect to disclosing all exculpatory and impeachment information;

     e.  Failing to adequately discipline OCDA employees and agents who were dishonest and abused their authority;

     f.  Condoning and encouraging COUNTY employees in the belief that they can violate the rights of persons such as WILKINS without impunity, and that such conduct will not adversely affect their opportunities for promotion and employment benefits; and

     g.  Condoning and encouraging the fabrication of evidence, including but not limited to shredding and altering CHP traffic reports and turning a blind eye to the known fact that the traffic reports had been altered.

122. Defendants COUNTY and OCDA SUPERVISORY DOES, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of WILKINS and other individuals similarly situated.

123. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, OCDA SUPERVISORY DOES acted with

COMPLAINT FOR DAMAGES

intentional, reckless, and callous disregard for WILKINS' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and OCDA SUPERVISORY DOES were affirmatively linked to and were a significantly influential force behind WILKINS' injuries.

124.   By reason of the aforementioned acts and omissions, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, loss of past and future earnings, loss of consortium and severe emotional and mental distress.

125.   Accordingly, Defendants COUNTY and OCDA SUPERVISORY DOES each are liable to WILKINS for compensatory damages under 42 U.S.C. § 1983.

126.   WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.  WILKINS also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

## NINTH CLAIM FOR RELIEF

### False Imprisonment

(By WILKINS against all Defendants)

127.   Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

128.   MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10, while acting in the course and scope of their duties as either prosecutors for the OCDA or investigators for the CHP and the STATE, intentionally deprived WILKINS of his freedom and freedom of movement for approximately thirteen years by fabricating and presenting false evidence that provided a basis for the first-degree murder charge and felony-murder theory at the first trial and by failing to

disclose exculpatory information.  Defendants continued to cause and perpetuate WILKINS' confinement for several years by continuing to withhold the exculpatory information, including the initial CHP traffic reports opining that WILKINS was not the PCF of the fatal collision. WILKINS did not consent to the false imprisonment.

129.   As indicated above, MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 knew that the initial CHP traffic reports opined that WILKINS was not the PCF of any of the collisions with the stove.  At all relevant times, Defendants knew or should have known that there was insufficient evidence to support a charge of first-degree murder and knew or should have known that the felony-murder theory did not apply to WILKINS' case.

130.   Additionally, after WILKINS was convicted of first-degree murder and sentenced to 26 years to life in prison, Defendants failed to take action to rectify WILKINS' wrongful conviction, thereby continuing WILKINS' false imprisonment throughout approximately 13 years.

131.   STATE is vicariously liable for the wrongful acts of MORRISON DOES 7-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

132.   COUNTY is vicariously liable for the wrongful acts of YELLIN, VANDIVER, MURRAY and DOES 1-6 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

133.   The conduct of the individual Defendants was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for WILKINS' rights, and therefore warrants the imposition of exemplary and punitive damages.

COMPLAINT FOR DAMAGES

134.   As a direct and proximate result of the aforementioned conduct, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, past and future earnings, loss of consortium and emotional and mental distress.  Accordingly, Defendants COUNTY, STATE, MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 each are liable to WILKINS for compensatory damages under 42 U.S.C. § 1983.  WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

### Negligence

### (By WILKINS against all Defendants)

135.   Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

136.   MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10, while acting in the course and scope of their duties as either prosecutors for the OCDA or investigators for the CHP and the STATE, were negligent and reckless, including but not limited to:

    a. Destroying the initial CHP traffic reports opining that WILKINS was not the PCF of the collisions with the stove, including the fatal collision;

    b. Fabricating new CHP traffic reports opining that WILKINS was the PCF of the collisions with the stove, including the fatal collision;

    c. As to VANDIVER and MORRISON, presenting false and fabricated evidence to MURRAY and YELLIN;

    d. As to MURRAY and YELLIN, presenting false and fabricated evidence to the jury at the first trial;

e. Failing to disclose exculpatory information, including the initial CHP traffic reports that were destroyed;

f. Pursuing a first-degree murder charge against WILKINS under the felony-murder theory when there was insufficient evidence to pursue this charge and theory;

g. The failure to properly and adequately train employees with respect to investigation and prosecution;

h. The negligent handling of evidence and witnesses.

137. Defendants had a duty not to engage in the aforementioned misconduct.

138. As a direct and proximate result of the aforementioned conduct, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, past and future earnings, loss of consortium and emotional and mental distress. STATE is vicariously liable for the wrongful acts of MORRISON and DOES 7-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

139. COUNTY is vicariously liable for the wrongful acts of YELLIN, VANDIVER, MURRAY and DOES 1-6 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

140. The conduct of the individual Defendants was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for WILKINS' rights, and therefore warrants the imposition of exemplary and punitive damages.

141. Accordingly, Defendants COUNTY, STATE, MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 each are liable to WILKINS for

COMPLAINT FOR DAMAGES

1  compensatory damages under 42 U.S.C. § 1983. WILKINS brings this claim
2  individually and seeks general and special damages in an amount to be determined
3  at trial.

4

5                      **ELEVENTH CLAIM FOR RELIEF**
6                  **Intentional Infliction of Emotional Distress**
7            **(Cal. Govt. Code § 829 and California Common Law)**
8                    (By WILKINS against all Defendants)

9          142.   Plaintiffs repeat and re-allege each and every allegation in the prior
10  paragraphs of this Complaint with the same force and effect as if fully set forth
11  herein.

12         143.   Defendants MURRAY, YELLIN, MORRISON, VANDIVER, and
13  DOES 1-10, while acting in the course and scope of their duties as either
14  prosecutors for the OCDA or investigators for the CHP and the STATE,
15  intentionally inflicted emotional distress upon WILKINS. The conduct of
16  Defendants MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 was
17  outrageous, including the destruction of the initial CHP traffic reports containing
18  exculpatory information and the fabrication and presentation of false evidence that
19  provided a basis for the first-degree murder charge and felony-murder theory at the
20  first trial.

21         144.   As indicated above, MURRAY, YELLIN, MORRISON, VANDIVER,
22  and DOES 1-10 knew that the initial CHP traffic reports opined that WILKINS was
23  not the PCF of any of the collisions with the stove. At all relevant times,
24  Defendants knew or should have known that there was insufficient evidence to
25  support a charge of first-degree murder and knew or should have known that the
26  felony-murder theory did not apply to WILKINS' case. Nonetheless, Defendants
27  charged WILKINS with first-degree murder under the felony-murder theory, which
28  was outrageous considering the facts of WILKINS' case.

145.   Defendants' conduct was so extreme that it goes beyond all possible bounds of decency.  Further, any reasonable person would regard Defendants' conduct as intolerable in a civilized community.  Defendants' outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners which a reasonable person would be expected to endure.

146.   On information and belief, MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 intended to cause WILKINS emotional distress.  In the alternative, MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 acted with reckless disregard for the probability that WILKINS would suffer emotional distress.

147.   STATE is vicariously liable for the wrongful acts of MORRISON and DOES 7-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

148.   COUNTY is vicariously liable for the wrongful acts of YELLIN, VANDIVER, MURRAY and DOES 1-6 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

149.   The conduct of the individual Defendants was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for WILKINS' rights, and therefore warrants the imposition of exemplary and punitive damages.

150.   As a direct and proximate result of the aforementioned conduct, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, past and future earnings, severe emotional distress, loss of consortium, and emotional and mental distress.  The conduct of MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 was a substantial factor in

causing WILKINS' severe emotional distress. Accordingly, Defendants COUNTY, STATE, MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 each are liable to WILKINS for compensatory damages under 42 U.S.C. § 1983. WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF

### Loss of Consortium

(By WILKINS and JONES against all Defendants)

151.   Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

152.   WILKINS and JONES were lawfully married at all times relevant to this action, and are now husband and wife.

153.   As a direct and proximate result of Defendants' conduct as described above, including the fabrication and presentation of false evidence and the failure to disclose exculpatory information, WILKINS was wrongfully convicted and incarcerated for over 13 years.  During certain of those 13 years, WILKINS and JONES suffered a loss of consortium.  But for the incarceration, WILKINS was able to and/or would have been able to perform the duties of a husband, including assisting in maintaining the home and providing love, companionship, affection, society, sexual relations, moral support, and solace to one another.

154.   As a direct and proximate result of Defendants' conduct as described above, WILKINS and JONES suffered a loss of consortium, which caused emotional and mental distress.

155.   MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10, were acting in the course and scope of their duties as either prosecutors for the OCDA or investigators for the CHP and the STATE at all relevant times.

156.   STATE is vicariously liable for the wrongful acts of MORRISON and DOES 7-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

157.   COUNTY is vicariously liable for the wrongful acts of YELLIN, MURRAY and DOES 1-6 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

158.   The conduct of the individual Defendants was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for WILKINS' rights, and therefore warrants the imposition of exemplary and punitive damages as to the individual defendants.

159.   As a direct and proximate result of the aforementioned conduct, WILKINS was wrongfully convicted and incarcerated for over 13 years and suffered a loss of liberty, past and future earnings, loss of consortium and emotional and mental distress.  Accordingly, Defendants COUNTY, STATE, MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10 each are liable to WILKINS for compensatory damages under 42 U.S.C. § 1983.  WILKINS brings this claim individually and seeks general and special damages in an amount to be determined at trial.

## THIRTEENTH CLAIM FOR RELIEF

### Violation of the Bane Act (California Civil Code 52.1)

(By WILKINS against all Defendants)

160.   Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

161.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion.

162.   Conduct that violates the Fourth Amendment violates the Bane Act when there is an intent to violate the civil rights of others.  An intent to violate one's civil rights can be demonstrated by a reckless disregard for the person's rights.

163.   MURRAY, YELLIN, MORRISON, VANDIVER, and DOES 1-10, while acting in the course and scope of their duties as either prosecutors for the OCDA or investigators for the CHP and the STATE, intentionally interfered with or attempted to interfere with WILKINS' constitutional rights as described above, including when they failed to disclose exculpatory evidence, fabricated new CHP traffic reports, and presented false evidence to the prosecutors and, in turn, to the jury at the first trial.

164.   Defendant STATE is vicariously liable for the wrongful acts of MORRISON and DOES 7-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

165.   Defendant COUNTY is vicariously liable for the wrongful acts of YELLIN, VANDIVER, MURRAY and DOES 1-6 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

166.   The conduct of the individual Defendants was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for WILKINS' rights, and therefore warrants the imposition of exemplary and punitive damages.

COMPLAINT FOR DAMAGES

1    167.   As a direct and proximate result of the aforementioned conduct,

2   WILKINS was wrongfully convicted and incarcerated for over 13 years and

3   suffered a loss of liberty, past and future earnings, loss of consortium and emotional

4   and mental distress.  Accordingly, Defendants COUNTY, STATE, MURRAY,

5   YELLIN, MORRISON, VANDIVER, and DOES 1-10 each are liable to WILKINS

6   for compensatory damages under 42 U.S.C. § 1983.  WILKINS brings this claim

7   individually and seeks general and special damages in an amount to be determined

8   at trial. Plaintiffs also seek statutory attorneys' fees, a multiplier and treble damages

9   under this claim.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants Joseph Morrison, Wesley Van Diver, Larry Yellin, Michael Murray, the County of Orange, the State of California, and Does 1-10, inclusive, as follows:

1. For compensatory damages, including general and special damages;
2. Severe emotional distress, both past and future;
3. For loss of income, both past and future;
4. For punitive damages against the individual defendants;
5. For interest;
6. For reasonable costs of this suit and attorneys' fees;
7. For treble damages under Civil Code Section 52 *et seq*.; and
8. For such further other relief as the Court may deem just, proper, and appropriate.

DATED:  December 23, 2020          LAW OFFICES OF DALE K. GALIPO

By  /s/ Dale K. Galipo
_____
    Dale K. Galipo
    Attorney for Plaintiffs

-37-

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED:  December 23. 2020          LAW OFFICES OF DALE K. GALIPO


                                   By */s/ Dale K. Galipo*
                                   _____
                                      Dale K. Galipo
                                      Attorney for Plaintiffs

-38-