1  WOODRUFF, SPRADLIN & SMART, APC
   DANIEL K. SPRADLIN – State Bar No. 82950
2  dspradlin@wss-law.com
   JEANNE L. TOLLISON – State Bar No. 238970
3  jtollison@wss-law.com
   ROBERTA A. KRAUS – State Bar No. 117658
4  bkraus@wss-law.com
   555 Anton Boulevard, Suite 1200
5  Costa Mesa, California 92626-7670
   Telephone: (714) 558-7000
6  Facsimile: (714) 835-7787

7  Attorneys for Defendant WESLEY VANDIVER, as an employee of
   the County of Orange, a public entity
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12 COLE WILKINS,                          CASE NO.: 8:20-cv-02417-JLS (DFMx)

13            Plaintiff,                   BEFORE THE HONORABLE
                                           JOSEPHINE L. STATON
14 v.                                      COURTROOM 10A

15 WESLEY VANDIVER; JOSEPH                 **DEFENDANT WESLEY
   MORRISON and DOES 1-10,                 VANDIVER'S NOTICE OF MOTION
16                                         AND MOTION TO DISMISS
            Defendants.                    PLAINTIFFS' FIRST AMENDED
17                                         COMPLAINT**

18                                         **[Fed. R. Civ. P. 12(b)(6)]**

19                                         [*Request for Judicial Notice filed
                                           concurrently herewith*]
20
                                           HEARING DATES PENDING:
21                                         Type:  Vandiver's Motion to Dismiss
                                           Date:  May 13, 2022
22                                         Time:  10:30 a.m.
                                           Ctrm:  10A
23
                                           Type:  Final Pretrial Conference
24                                         Date:  October 14, 2022
                                           Time:  10:30 a.m.
25                                         Ctrm:  10A

26                                         ACTION FILED: December 23, 2020
                                           TRIAL DATE: None
27

28 ///

   1645736.1                              1

TO:    PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 13, 2022, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10A of the above-entitled Court, located at the Ronald Reagan Federal Building and Courthouse, 411 W. Fourth Street, Santa Ana, California, Defendant WESLEY VANDIVER, as an employee of the COUNTY OF ORANGE, a public entity ("Vandiver"), will move the Court to dismiss the first amended complaint of Plaintiff COLE WILKINS ("Plaintiff") under Federal Rules of Civil Procedure 12(b)(6), on the ground it fails to state sufficient facts.

This motion is made following a pre-filing meet and confer under Local Rule 7-3 that took place on November 29, 2021.

This motion will be based on this notice and the attached memorandum of points and authorities, the separately filed request for judicial notice, as well as such further oral or documentary evidence that may be presented at the hearing on the motion.

DATED:  December 8, 2021          WOODRUFF, SPRADLIN & SMART, APC


By: /s/ *Roberta A. Kraus*
          DANIEL K. SPRADLIN
          JEANNE L. TOLLISON
          ROBERTA A. KRAUS
          Attorneys for Defendant WESLEY VANDIVER, as an employee of the County of Orange, a public entity

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

1

# **TABLE OF CONTENTS**

2

Page

3

1.      INTRODUCTION ...................................................................... 6

4
        A.      Procedural History ......................................................... 7

5
        B.      Summary of First Amended Complaint ..................... 7

6
        C.      Standard of Review ........................................................ 10

7
2.      THE FIRST CLAIM FOR FABRICATION OF EVIDENCE AND SECOND CLAIM FOR CONSPIRACY TO FABRICATE EVIDENCE ARE FACTUALLY DEFICIENT AS TO VANDIVER ................... 11

8
3.      PLAINTIFF'S FEDERAL CLAIMS AGAINST VANDIVER ARE BARRED BY QUALIFIED IMMUNITY ....................................... 15

9
4.      CONCLUSION ........................................................................... 18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1645736.1

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

<u>**FEDERAL CASES**</u>

4     *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................11

5     *Beliveau v. Caras*, 873 F. Supp. 1393 (C.D. Cal. 1995) ...............................................10

6     *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................10, 11

7     *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500 (2019) ...................................15, 16

8     *D.C. v. Wesby*, 138 S. Ct. 577 (2018) .........................................................................16

9     *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ....................................................12

10    *Heck v. Humphrey*, 512 U.S. 477 (1994)........................................................................7

11    *Jenkins v. Trustees of Sandhills Community College,*

12       259 F. Supp. 2d 432 (M.D. N.C. 2003) ................................................................12

13    *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ...................................................................16

14    *Kyles v. Whitley*, 514 U.S. 419 (1995).........................................................................17

15    *Mendocino Environmental Ctr. v. Mendocino County,*

16       192 F.3d 1283 (9th Cir. 1999)..................................................................................12

17    *Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009)..............................................11

18    *Pearson v. Callahan*, 555 U.S. 223 (2009) .................................................................16

19    *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) .....................12

20    *San Diego Police Officers' Ass'n v. San Diego City Emp. Ret. Sys.,*

21       568 F.3d 725 (9th Cir. 2009).....................................................................................13

22    *Saucier v. Katz*, 533 U.S. 194 (2001) ..........................................................................16

23    *Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017) ...........................16

24    *Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008).......................................................12

25    *Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995).............................................................12

26    *Sollberger v. Wachovia Securities, LLC*, 2010 WL 2674456,

27       at *4 (C.D. Cal., June 30, 2010)..............................................................................13

28    *Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) ....................................16

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1645736.1

# **TABLE OF AUTHORITIES**

Page

*Woodrum v. Woodward County*, 866 F.2d 1121 (9th Cir. 1989) .................................12

## **STATE CASES**

*Ass'n for Los Angeles Deputy Sheriffs v. Superior Ct.*, 8 Cal. 5th 28 (2019) ..............17

*In re Brown*, 17 Cal.4th 873 (1998)...............................................................................17

## **FEDERAL STATUTES**

42 U.S.C. section 1983 ...................................................................................................12

Federal Rules of Civil Procedure 12(b)(6) ......................................................................2

## **STATE STATUTES**

Penal Code section 187...................................................................................................9

## **CONSTITUTION**

U.S. Const. amend. XIV, section 1 ................................................................................11

## **OTHER**

Model Civil Jury Instructions 9th Cir. 9.33 (2021) .......................................................12

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1645736.1

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

This action arises from a July 7, 2006 fatal automobile accident that occurred on the 91 freeway after a stolen stove fell off Plaintiff's truck and another driver swerved and crashed to avoid hitting the stove.  In addition to the fatal accident, three other accidents occurred due to the stove falling off Plaintiff's truck.

Plaintiff alleges Defendant Morrison, a CHP Sergeant, altered traffic reports prepared by other officers to change the primary collision factor from the other drivers who swerved to avoid the stove to "other than driver," thus implicating Plaintiff as the primary cause. Plaintiff also asserts that Defendant Vandiver, an investigator with the OCDA was told about the change by one of the investigating officers, and that Vandiver's response was to say he did not want to hear about it. Subsequently, while the first criminal trial was ongoing, the prosecuting district attorney – Murray – was advised about the changed report; however, Murray stated it did not matter because Plaintiff was a fleeing felon and he intended to pursue a murder conviction under the felony murder rule.

Plaintiff's initial trial resulted in his murder conviction under the felony murder rule; however, in 2013 the California Supreme Court reversed the conviction based on an issue related to the jury instructions. Prior to Plaintiff's retrial, Plaintiff learned that at least one CHP report had been altered to show him as the primary collision factor. Upon learning this, in July 2015, Plaintiff brought a motion to recuse the Orange County District Attorney's office from handling the prosecution due to the fabricated/concealed evidence. While the OCDA was not recused, the state trial judge took the felony murder charge off the table. Following his retrial, Plaintiff was convicted of second degree murder in 2017, which was later reduced to involuntary manslaughter by the Court of Appeal, resulting in a reduced sentence.

Following this Court's ruling on motions to dismiss, Plaintiff's first amended complaint asserts claims against Defendants Morrison and Vandiver only, and

includes claims for (1) fabrication of evidence/false evidence violations, (2) conspiracy to fabricate/falsify evidence, (3) *Brady* violations, and conspiracy to commit *Brady* violations.   As discussed below, none of Plaintiff's claims against Vandiver have merit and should be dismissed.

## A.   Procedural History

Vandiver filed a motion to dismiss the complaint in this matter. On November 4, 2021, this Court issued its ruling granting the motion in part and denying it in part. (Dkt. 59) Specifically, all of the state law claims were dismissed due to Plaintiff's failure to timely comply with California's Claim Act. The Court deferred ruling on whether Plaintiff's federal claims were time barred, stating that questions of fact remained with respect to how long *Heck v. Humphrey*, 512 U.S. 477 (1994), barred Plaintiff's claims. The Court dismissed Plaintiff's malicious prosecution claim since the criminal case did not terminate in his favor. The Court granted with leave to amend Plaintiff's claims against Vandiver for fabrication of evidence and conspiracy to fabricate evidence, stating that the single fact alleged against Vandiver that when Heckenkemper voiced his disagreement about having his report changed, Vandiver responded that he did not want to hear about it was insufficient. (Dkt. 59 at p. 15) The Court denied Vandiver's motion to dismiss Plaintiff's *Brady* violation claim and conspiracy to commit a *Brady* violation.

## B.   Summary of First Amended Complaint

Defendant Wesley Vandiver was an investigator employed by the Orange County District Attorney ("OCDA"). (¶5) Defendant Joseph Morrison was employed as a Sergeant with the California Highway Patrol ("CHP"). (¶8)

On July 7, 2006, at approximately 5:00 a.m., Plaintiff was driving westbound on the 91 Freeway in Anaheim with stolen kitchen appliances in the back of his truck when a boxed stove fell from the back of the truck and onto the freeway. At that time, he was approximately 60 miles from the location in Riverside County where the items had been stolen. (¶18) Plaintiff was unaware that the stove had fallen out of the truck

7

1    until he was pulled over by another driver whose car had collided with the stove. (¶19)
2    Other motorists also collided with the stove or were involved in accidents while trying
3    to avoid it, including: Piquette, a former Riverside County Sheriff's deputy, who
4    swerved sharply to the right, veered across the freeway, and collided with a cement
5    truck, which then flipped over and landed on Piquette's car, killing him; Thomas who
6    collided with the stove; Howard who collided with the stove; and Lay (the driver who
7    pulled Plaintiff over) who also collided with the stove. (¶20)

8         Shortly after the collisions occurred, CHP officers prepared traffic reports
9    relating to each of the four collisions, identifying the primary collision factor (PCF) of
10   each. (¶21) The original CHP report pertaining to the fatal collision identified
11   Piquette's driving as the PCF of the fatal collision. (Id.) The original CHP report
12   pertaining to the second collision, involving motorist R. Howard, was written by CHP
13   officer Heckenkemper and identified the PCF as motorist Howard driving too fast for
14   road conditions. (¶22) Heckenkemper submitted his report to the CHP Accident
15   Investigation Unit, where a reviewing officer signed off on it. (Id.)

16        After the report was finalized and approved, Sergeant Morrison with the CHP
17   changed Heckenkemper's report and told Heckenkemper that he had destroyed it and
18   changed the PCF to "other than driver" because Plaintiff was being charged with
19   felony murder and law enforcement wanted the PCFs in the three collisions to be
20   consistent. (¶22) Heckenkemper did not approve or agree with the changes to his
21   report. (Id.)  CHP Officer Taylor indicated that it was possible that the OCDA's office
22   (which would include Vandiver) initiated that change in the PCF. (Id.)

23        Heckenkemper had a meeting with Vandiver about the CHP reports and told
24   Vandiver that his report had been changed and he did not agree with Morrison's PCF.
25   (¶23), Heckenkemper told Vandiver that Morrison had destroyed Heckenkemper's
26   report and changed the PCF to "other than driver" for the express purpose of
27   fabricating a basis to charge Plaintiff with felony murder. (Id.) Vandiver responded to
28   Heckenkemper that he did not want to hear about it and that he would have to testify

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

8

about it.[1] (Id.) CHP Sgt. Jay Gentile indicated, in an interview filed as an exhibit to Plaintiff's motion to recuse the OCDA's office, that Vandiver and the OCDA's office was involved in changing the PCF and colluded with the CHP in order to make sure that Piquette "looked better, as opposed to having the victim [Piquette] look like he's the bad guy for, uh, driving too fast," in other words, to form the basis of a felony murder charge. (Id.)

Sergeant Morrison altered the traffic report regarding the fatal collision to reverse the conclusion that Piquette's driving was the PCF and shredded the original CHP reports. (¶24)

On July 13, 2006, the prosecution filed a complaint against Plaintiff alleging a violation of California Penal Code section 187, first degree murder under the felony-murder rule. (¶26) While the trial was in progress in 2008, former CHP Chief Steven Beeuwsaert told Michael Murray, a prosecutor with the OCDA, about the changed reports, but Murray told Beeuwsaert that it did not matter because Plaintiff was a fleeing felon, and Murray intended to pursue a conviction against him under the felony-murder rule. (¶31)

On May 5, 2008, a jury convicted Plaintiff of first-degree murder under the felony-murder rule. (¶32) He was sentenced to 26 years to life in prison. (Id.)

Plaintiff appealed his conviction, arguing that the trial court erred when it refused to properly instruct the jury on the escape rule relating to the felony murder rule. (¶¶ 29, 33) The appellate court affirmed the trial court's ruling on January 7, 2011; however, on March 7, 2013, the California Supreme Court reversed the appellate court's opinion, remanding the case for further proceedings consistent with its opinion that the failure to instruct the jury on the escape rule was not harmless error because Plaintiff was at least 60 miles from the scene of the burglary when the stove fell off his truck. (¶¶33-35)

---

[1] In Paragraph 23, Plaintiff has interchanged Morrison and Heckenkemper.

1645736.1

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1
2
3
4
5
6
7

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Prior to the retrial, Plaintiff discovered that CHP officers had altered and destroyed their original traffic collision reports, and on July 10, 2015, he filed a motion to recuse the OCDA, alleging outrageous government conduct. (¶36) After holding an evidentiary hearing, the trial court found that serious misconduct by members of the prosecution team occurred in this case. (Id.) As a sanction, the court excluded felony murder as a theory of liability during the retrial and also recused Murray and Defendant Yellin as prosecutors on the case. (¶¶37, 38)

After a retrial in August 2017, a jury found Plaintiff guilty of second-degree murder under an implied malice theory. (¶39) On October 27, 2017, Plaintiff's sentence was reduced from 26 years to life in prison to 16 years to life in prison. (Id.) On appeal from this jury verdict, the appellate court ruled that the jurors at the retrial did not have enough evidence to support a second-degree murder conviction because there was no evidence Plaintiff was speeding or otherwise driving dangerously and it modified the conviction to involuntary manslaughter, which carried a maximum sentence of four years. (¶40) On March 10, 2020, Plaintiff was resentenced to four years in prison for the involuntary manslaughter conviction. (¶41) By that time, he had served approximately thirteen years in prison. (Id.)

## C.   **Standard of Review**

In ruling on a motion to dismiss, the court must accept all properly pleaded factual allegations as true; however, the court need not accept conclusory allegations or legal characterizations as true. *Beliveau v. Caras*, 873 F. Supp. 1393, 1395-1396 (C.D. Cal. 1995).

To overcome a motion to dismiss, the complaint must contain facts that are enough to raise the right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint is insufficient if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. *Id*. at 570.

1645736.1

Relying on *Twombly* the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), held that a complaint to be sufficient must do more than offer "'labels and conclusions' or a formulaic recitation of the elements of a cause of action." The *Iqbal* court set forth a two-prong process a court must go through to determine if a complaint is sufficient. First, the court must accept as true all well-pleaded factual allegations, but this stricture does not apply to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, a complaint must plausibly state a claim for relief. *Id*. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. *Id*. In other words, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## 2. THE FIRST CLAIM FOR FABRICATION OF EVIDENCE AND SECOND CLAIM FOR CONSPIRACY TO FABRICATE EVIDENCE ARE FACTUALLY DEFICIENT AS TO VANDIVER

Plaintiff asserts that Vandiver violated his due process rights by providing false and/or fabricated evidence in the CHP traffic collision reports, destroying the initial CHP traffic collision reports opining that Plaintiff was not the PCF of the fatal collision, fabricating and concealing exculpatory evidence and failing to correct the fabrication/concealment even after Deputy Heckenkemper advised Vandiver during the first trial that he did not agree with the changes made to his traffic report, and that as a result he was convicted of first-degree murder at the first trial.

The Fourteenth Amendment generally prohibits states from depriving individuals of property without due process of law. U.S. Const. amend. XIV, § 1. To

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1645736.1

state a viable section 1983 claim based upon denial of procedural due process, a plaintiff must allege (1) government deprivation; (2) of a liberty or property interest protected by the Constitution; (3) without adequate process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

Under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), a plaintiff can bring a cause of action for fabrication of evidence where government defendants (1) deliberately fabricated evidence that was used to criminally charge, prosecute and/or convict the plaintiff; (2) continued their investigation of the plaintiff despite the fact that they knew or should have known that he was innocent; or (3) used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information. *Devereaux*, at 1076; Model Civ. Jury Instr. 9th Cir. 9.33 (2021).

A claim of conspiracy to violate a plaintiff's civil rights must expressly allege facts "demonstrating an agreement between or a 'meeting of the minds' of the defendants to violate the plaintiff's constitutional rights." See *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995); see also, *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (to prove conspiracy under § 1983, an agreement or meeting of minds to violate the plaintiff's constitutional rights must be shown); and *Mendocino Environmental Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (a plaintiff must "demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights" and then must have, "by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage."). Conclusory allegations of coordinated actions are not sufficient to state a claim for conspiracy. See *Jenkins v. Trustees of Sandhills Community College*, 259 F. Supp. 2d 432, 445 (M.D. N.C. 2003). Further, to be

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

12

actionable, the conspiracy must have resulted in the violation of a constitutional right. See *San Diego Police Officers' Ass'n v. San Diego City Emp. Ret. Sys.*, 568 F.3d 725, 740 (9th Cir. 2009).

Here, Plaintiff's amended complaint is still devoid of facts to show that Vandiver fabricated or concealed evidence or entered into a conspiracy to fabricate or conceal evidence. Once again, the only factual allegation that is specific to Vandiver is that Heckenkemper voiced to Vandiver his disagreement about having his report changed, and Vandiver responded that he did not want to hear about it because he would have to testify about it.  (¶23) The facts show that Heckenkemper voiced his concerns to Vandiver *after the fact*. The facts do not show that Vandiver himself changed any report or that he instructed or encouraged someone else to change any report. The facts also show that the district attorney was made aware of the change but did not find it significant. Further, as shown by the evidence attached to Vandiver's request for judicial notice, Vandiver and the prosecuting attorney were told about the altered traffic reports at around the same time – just prior to the start of trial or shortly after trial began. See RJN, Exhibit A, Vandiver interview at p. 125 (Bates stamped 1920) and Beeuswaert interview at p. 173 (Bates stamped 1968).

In an attempt to add additional "facts," the amended complaint alleges that CHP Officer Taylor indicated that it was *possible* that the OCDA's office (which would include Vandiver) initiated that change in the PCF. (¶22)[2]. However, a review of Taylor's interview makes clear that it was the Public Defender's investigators who made the allegations that the DA's office was involved in initiating the change in the PCF and that when asked if the DA's office orchestrated the change, Taylor said "no."

Q:     So was Rosenberg involved in this, this, uh, fatal accident at all?

Taylor:     He was the captain of the Santa Ana area at the time. And

---

[2]  Plaintiff lumps Mr. Vandiver in with the OCDA's office as a whole. This type of shotgun pleading is improper. See *Sollberger v. Wachovia Securities, LLC*, 2010 WL 2674456, at *4 (C.D. Cal., June 30, 2010), No. SACV 09-0766AGANX.

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

he's, he's the one that, uh- and I'm not sure if this was his brainchild again. *The girls were wondering if, uh, if the DA's office had orchestrated the cause of this collision and things like that.* ***And I said no***, you know, to the best of my knowledge, you know, I wasn't privy to any conversations from upper management, but at some point the decision was made where, hey, uh, rather than particular kind of PCF, we're going to go this way with it. And we said okay, fine. And, uh, so we had Bernardin rewrite the report, uh, to support, uh, the, the case that management decided that they wanted to go with. So it's playing out like it was this gigantic scheme to cover up and to, to, uh – you know, the girls are kind of trying to play it up. *When I say the girls, I mean the investigators from the, um, uh, uh –*

Q:      *Yeah, the public defender's office?*

Taylor:      *The public defender's officer, yeah.*

See RJN, Exhibit A, Taylor interview at p. 196 (Bates stamped 1991); emphasis added.

Plaintiff also has added in allegations relating to statements attributable to Gentile, which Plaintiff identifies as having been made in an interview of him, in which Gentile is alleged to have stated that the change was made to make the victim look like he was without fault. (FAC, ¶23) In fact, as shown by Vandiver's request for judicial notice, Gentile did not make that statement – it was made by the investigator conducting the interview as an explanation of Plaintiff's claim. Gentile stated in his interview that as best he recalled, Vandiver did not get involved in the matter until the pre-trial phase, and certainly not within the first 30 days, which is when the traffic reports were prepared. RJN, Exhibit A, Gentile interview at p. 246 (Bates stamped 2041). Gentile further stated in his interview that,

A:      I don't remember-no, I don't remember Van Diver being there at all, in the first 30 days, but that's----

Q:     Yeah, and Joe Morrison.

A:     Don't quote me on that, but-

Q:     And, yeah, Joe Morrison wasn't with our DA's office at the time.

A:     Yeah, Morrison was with the CHP at that point, yeah.

Q:     He was with your guys, at that point.

A:     Absolutely. Again, uh, *no ties to the DA's office at that point*.

RJN, Exhibit A, Gentile interview at p. 247 (Bates stamped 2042); emphasis added.

Thus, as with the original complaint, the only fact alleged against Vandiver is that he was told by Heckenkemper that Morrison had destroyed Heckenkemper's report and changed the PCF to "other than driver" and Vandiver responded to Heckenkemper that he did not want to hear about it and that he would have to testify about it. This fact does not show that Mr. Vandiver fabricated any evidence nor does it show he conspired to fabricate evidence. And, as shown by Vandiver's accompanying request for judicial notice, the prosecuting DA – Murray – was advised about the changed reports at around the same time as Vandiver, either just before trial started or shortly after it began.

Plaintiff's facts are, once again, insufficient to show that Vandiver fabricated any evidence or was part of a conspiracy to fabricate evidence. As such, Plaintiff's first and second claims should be dismissed as to Vandiver.

## 3.     **PLAINTIFF'S FEDERAL CLAIMS AGAINST VANDIVER ARE BARRED BY QUALIFIED IMMUNITY**

Plaintiff asserts that the OCDA team (including Vandiver) failed to disclose exculpatory evidence. (¶¶36, 48, 64) There is no allegation that Vandiver failed to disclose any exculpatory evidence to the District Attorney. Based on the allegations in Plaintiff's first amended complaint, Vandiver is entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019)

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

(*citing Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). Qualified immunity is a question of law and not a question of fact. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008).

The qualified immunity defense involves two questions: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts . . . show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the officer's conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The two step analysis is not required, however, when it is obvious that there was not a clearly established right at the time of the official's conduct and the court may "elect[] to 'bypass *Saucier's* first step and decide only whether [the alleged right] was clearly established.'" *Pearson v. Callahan*, 555 U.S. 223, 238 (2009). The *Saucier* "rule does not – and obviously cannot – specify the sequence in which judges reach their conclusions in their own internal thought processes. Thus, there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id.* at 239.

Importantly, the Supreme Court of the United States has repeatedly held that "the clearly established right must be defined with specificity" and "not . . . at a high level of generality." *City of Escondido, Cal.*, 139 S. Ct. at 503 (*citing Kisela*, 138 S. Ct. at 1152.) "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). "Otherwise, the rule is not one that 'every reasonable official' would know." *Id*.

It is Plaintiff's burden to show that the rights allegedly violated by Mr. Vandiver were clearly established in 2008 when the first trial took place. See *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).

Here, Plaintiff alleges that former CHP Chief Beeuwsaert told DA Murray about the changed traffic collision reports while the first trial was in progress and that

1645736.1

Murray chose to go forward with the felony murder charge and to not disclose the information to defense counsel. (¶31). As shown by the accompanying request for judicial notice, Vandiver and the prosecuting attorney were told about the altered traffic reports at around the same time – just prior to the start of trial or shortly after trial began. See RJN, Exhibit A, Vandiver interview at p. 125 (Bates stamped 1920) and Beeuswaert interview at p. 173 (Bates stamped 1968).

Case law has held that an investigator's duty to disclose *Brady* material belongs to the prosecutor. An investigator has no obligation to report the *Brady* material directly to the defense. The duty to disclose exculpatory evidence to the defense lies with the prosecutor. See *Kyles v. Whitley*, 514 U.S. 419 (1995); *see also Ass'n for Los Angeles Deputy Sheriffs v. Superior Ct.*, 8 Cal. 5th 28, 51 (2019) ("*Brady* imposes on prosecutors "a duty to learn of any favorable evidence known to the others acting on the government's behalf in [a] case, including the police." *Kyles*, *supra*, 514 U.S. at p. 437, 115 S.Ct. 1555. Prosecutors are deemed constructively aware of *Brady* material known to anyone on the prosecution team and must share that information with the defense. See *In re Brown* (1998) 17 Cal.4th 873, 879, 72 Cal.Rptr.2d 698, 952 P.2d 715)".

Plaintiff has alleged that Vandiver – as part of the OCDA team – had a duty to disclose exculpatory evidence to the criminal defendant. But that is not what existing case law holds. Vandiver is unaware of any case law in existence at the time of the first criminal trial against Plaintiff (i.e., 2006-2008) that imposed a duty on him to disclose exculpatory evidence to a criminal duty. That duty rests solely with the prosecutor. Accordingly, unless there is case law that clearly establishes that an investigator with the District Attorney's office can be held liable for fabrication of evidence or a *Brady* violation under similar circumstances despite the independent decision of a prosecutor to withhold exculpatory evidence, Vandiver is entitled to qualified immunity. Because Plaintiff cannot meet this burden, Vandiver is entitled to qualified immunity on Plaintiff's federal claims.

17

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

## 4.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' first amended complaint against Defendant Wesley Vandiver should be dismissed.

DATED:  December 8, 2021               WOODRUFF, SPRADLIN & SMART, APC


By: /s/ *Roberta A. Kraus*
      DANIEL K. SPRADLIN
      JEANNE L. TOLLISON
      ROBERTA A. KRAUS
      Attorneys for Defendant WESLEY VANDIVER, as an employee of the County of Orange, a public entity

18

1645736.1

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am over the age of 18 and not a party to the within action; I am employed by WOODRUFF, SPRADLIN & SMART in the County of Orange at 555 Anton Boulevard, Suite 1200, Costa Mesa, CA 92626-7670.

On December 8, 2021, I served the foregoing document(s) described as **DEFENDANT WESLEY VANDIVER'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

☐   by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

☐   **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of WOODRUFF, SPRADLIN & SMART for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒   **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☐   **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by _____ to receive said documents, with delivery fees provided for. I am readily familiar with the practices of WOODRUFF, SPRADLIN & SMART for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by _____ on said date in the ordinary course of business.

☐   **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☐   **(BY PERSONAL SERVICE)** I delivered such envelope(s) by hand to the offices of the addressee(s).

☒   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on December 8, 2021, at Costa Mesa, California.

/s/ *Laura F. Perez*
LAURA F. PEREZ

1645736.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

## COLE WILKINS v. WESLEY VANDIVER, et al.

## USDC, CENTRAL DISTRICT OF CALIFORNIA
### CASE NO.:  8:20-cv-02417-JLS (DFMx)

### ASSIGNED FOR ALL PURPOSES TO
### HONORABLE JOSEPHINE L. STATON
### COURTROOM 10A

## SERVICE LIST

LAW OFFICES OF DALE K. GALIPO          Attorneys for Plaintiff
Dale K. Galipo, Esq.                                **COLE WILKINS**
Renee V. Masongsong, Esq.
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118
Email:  dalekgalipo@yahoo.com
            rvalentine@galipolaw.com

Iveta J. Ovsepyan, Esq.                          Attorneys for Defendant
Donna M. Dean, Esq.                              **JOSEPH MORRISON**
CAAG – Office of Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA  90013-1230
Telephone: (213) 269-6606 / (213) 269-6509
Facsimile: (916) 731-2120
Email:  iveta.ovsepyan@doj.ca.gov
            donna.dean@doj.ca.gov

4/7/21

20

1645736.1