LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLE WILKINS, <br><br> Plaintiff, <br><br> vs. <br><br> WESLEY VANDIVER; JOSEPH MORRISON, <br><br> Defendants. | Case No. 8:20-cv-02417-JLS-DFM <br><br> [*Hon. Josephine L. Staton*] <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT WESLEY VANDIVER'S MOTION TO DISMISS PLAINTIFF'S FAC; OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: May 13, 2022 <br> Time: 10:30 a.m. <br> Courtroom: 10A |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I. INTRODUCTION ................................................................................................. 1

II. LEGAL STANDARD ........................................................................................... 2

III. ARGUMENT ........................................................................................................ 4

    A. Wilkins Properly Pled His Claims against Vandiver for *Brady* Violations and Conspiracy Based on *Brady* Violations ........................................................................................... 4

    B. Wilkins Has Cognizable Claims Against Vandiver for Both Fabrication of Evidence and Conspiracy to Fabricate of Evidence ........................................................................................ 6

    C. Vandiver Violated Clearly Established Law and Is Therefore Not Entitled to Qualified Immunity ........................... 11

IV. CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

### Cases

*Anderson v. Creighton*,
　483 U.S. 635 (1987) ............................................................................................. 8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ............................................................................................. 2

*Balistreri v. Pacifica Police Dep't*,
　901 F.2d 696 (9th Cir. 1988) ............................................................................... 2

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ............................................................................................. 2

*Benigni v. City of Hemet*,
　879 F.2d at 473 (9th Cir. 1988) ........................................................................... 9

*Brady v. Maryland*,
　373 U.S. 83 (1963) ............................................................................................... 9

*Conservation Force v. Salazar*,
　646 F.3d 1240 (9th Cir. 2011) ............................................................................. 2

*Devereaux v. Abbey*,
　263 F.3d 1080 (9th Cir. 2001) ......................................................................... 4, 8

*Doe v. United States*,
　419 F.3d 1058 (9th Cir. 2005) ............................................................................. 6

*Gantt v. City of L.A.*,
　717 F.3d 702 (9th Cir. 2013) ............................................................................... 8

*Geraci v. Homestreet Bank*,
　347 F.3d 749 (9th Cir. 2003) ............................................................................... 2

*Geter v. Fortenberry*,
　849 F.3d 1550 (5th Cir. 1988) ............................................................................. 4

*Giglio v. United States*,
　405 U.S. 150 (1972) ............................................................................................. 9

*Hall v. City of Los Angeles*,
　697 F.3d 1059 (9th Cir. 2012) ............................................................................. 9

*Harlow v. Fitzgerald*,
　457 U.S. 800 (1982) ............................................................................................. 8

*Headwaters Forest Defense v. County of Humbolt*,
　276 F.3d 1125 (9th Cir. 2002) ............................................................................. 8

*Hernandez v. City of Napa*,
　781 F. Supp. 2d 985 (N.D. Ca. 2011) ................................................................. 5

*Hope v. Pelzer*,
    536 U.S. 730 (2002) ..............................................................................................8

*Houghton v. South*,
    975 F.2d 1532 (9th Cir. 1992)..............................................................................9

*Hovey v. Ayers*,
    458 F.3d 892 (9th Cir. 2006)................................................................................6

*Johnson v. Jones*, 515 U.S. 304, 313 (1995)……………………………………….11

*Knox v. Southwest Airlines*, 124 F.3d 1103 (9th Cir. 1997)………………………..11

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)……………………….....3

*Mendocino Enviro. Center v. Mendocino County*,
    192 F.3d 1283 (9th Cir. 1999).............................................................................5

*Napue v. Illinois*,
    360 U.S. 264 (1959) ............................................................................................9

*Newsome v. McCabe*,
    256 F.3d 747 (7th Cir. 2001)................................................................................9

*Paratt v. Taylor*,
    451 U.S. 527 (1981) ............................................................................................3

*Pareto v. F.D.I.C.*,
    139 F.3d 696 (9th Cir. 1998)................................................................................2

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ............................................................................................8

*Pierce v. Gilchrist*,
    359 F.3d 1279 (10th Cir. 2004)............................................................................4

*S.B. by & through Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218,
    (E.D. Cal. 2018)……………………………………………………………………..3

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)................................................................................2

*Strickler v. Greene*,
    527 U.S. 263 (1999) ............................................................................................6

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ............................................................................................3

*Tennison v. City & County of San Francisco*,
    570 F.3d 1078 (9th Cir. 2009)..............................................................................9

*United States v. Bagley*,
    473 U.S. 667 (1985) ............................................................................................6

*United States v. Redwood City*,
      640 F.2d 963 (9th Cir. 1981) ........................................................................... 1

*Williamson v. Gen. Dynamics Corp.*,
      208 F.3d 1144 (9th Cir. 2000) ......................................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights and state tort case arises from the overcharging of Plaintiff Cole Wilkins ("Wilkins") and the related fabrication of false evidence and *Brady* violations committed by Defendants. Due to the destruction of initial California Highway Patrol ("CHP") traffic reports containing exculpatory evidence and the fabrication and presentation of false CHP traffic reports, Wilkins was wrongfully convicted of first-degree murder and incarcerated for approximately thirteen years for what ultimately became an involuntary manslaughter conviction carrying a maximum sentence of four years. The initial CHP reports attributed the July 7, 2006 collisions to primary factors ("PCF") other than Wilkins, including the other drivers driving too fast for the conditions. Defendant Wesley Vandiver ("Vandiver"), who was an investigator with the Orange County District Attorney's Office ("OCDA"), was informed that the CHP reports were destroyed and altered, and he failed to take any action to prevent the presentation of this false and fabricated evidence. Rather, Vandiver asserted that he did not want to listen to John Heckenkemper, who was the CHP officer who drafted the initial traffic collision reports, about Heckenkemper's disagreement with his reports being destroyed and altered. According to CHP Officer Scott Taylor, it was possible that the OCDA's office (which would include Vandiver) initiated the change in the PCF. During Wilkins' first criminal trial, the prosecution and Vandiver learned about the destroyed and altered reports and continued to withhold the exculpatory evidence and presented the fabricated evidence. As a result, Wilkins was convicted of first-degree murder under the felony-murder theory, whereas Wilkins' conviction was ultimately reduced to involuntary manslaughter.

On November 4, 2021, this Court ruled on Defendant Vandiver's motion to dismiss Plaintiffs' operative complaint and declined to dismiss Wilkins' *Brady* claim and *Brady* conspiracy claim against Vandiver. (Dkt. 59). Wilkins filed a First

Amended Complaint ("FAC"), alleging claims for fabrication of evidence, conspiracy to fabricate evidence, *Brady* violations, and conspiracy to commit *Brady* violations against Defendants Vandiver and Joseph Morrison. Vandiver subsequently filed a motion to dismiss Wilkins' FAC and a request for judicial notice, inappropriately referencing extrinsic evidence beyond the four corners of Wilkins' FAC. Plaintiff opposes Defendant Vandiver's motion to dismiss and request for judicial notice as set forth herein, including that this Court has already declined to dismiss Plaintiff's *Brady* claims against Vandiver.

## II. <u>LEGAL STANDARD</u>

Dismissal under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) is rare. Indeed, it is "only [in] the extraordinary case in which dismissal is proper" for failure to state a claim. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). A motion pursuant to Fed. R. Civ. P. Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a pleading. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* A plaintiff need only provide a short and plain statement showing that he is entitled to relief. FRCP 8(a)(2).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a

complaint should not be dismissed on such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000); *see also United States v. Hempfling*, 431 F.Supp.2d 1069, 1075 (E.D. Cal. 2006) ("A Rule 12(b)(6) motion is disfavored and rarely granted."). In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the pleading, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The pleading must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When ruling on a FRCP Rule 12(b)(6) motion, the court generally may not consider evidence outside of the pleadings. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Judicial notice is an exception to this rule which allows courts to consider a fact that is not subject to reasonable dispute because it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This includes "matters of public record" such as court filings. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Where a court takes judicial notice of another court's filings, it does so not for the truth of the facts recited therein, but for the existence of the opinion and its legal effect. *See, e.g.*, *S.B. by & through Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1229 n.1 (E.D. Cal. 2018). Rule 12(b)(6) motions are for testing the sufficiency of the allegations in the pleading as alleged, not for weighing a defendant's additional evidence, and a motion to dismiss is not an opportunity for the defendant to ignore the pleadings and propose his own set of facts. In light of these important standards, it is clear that Plaintiff has alleged sufficient facts to

support the challenged claims.

## III. ARGUMENT

### A. Wilkins Properly Pled His Claims against Vandiver for *Brady* Violations and Conspiracy Based on *Brady* Violations

Establishing a *Brady* violation requires proof that evidence was (1) suppressed, (2) exculpatory, and (3) material. *Hovey v. Ayers*, 458 F.3d 892, 916-917 (9th Cir. 2006). Evidence is "exculpatory" when it is favorable to the accused, whether because it tends in any way to negate guilt or because it is impeaching. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Strickler v. Greene*, 527 U.S. 263, 263 (1999). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527 U.S. at 280-81 (citing *Bagley* 473 U.S. at 682). "An opinion expressed in writing by a veteran CHP officer that [Wilkins'] conduct was not the [PCF] in this fatal collision was without question *Brady* material . . . [Wilkins] should have received the exculpatory material contained in the destroyed reports prior to his first trial pursuant to the Brady discovery rule. Instead, the evidence was suppressed and later destroyed." *People v. Wilkins*, 2020 WL 64715 (Jan. 7, 2020) (quoting Super. Ct. No. 06NF2339) (emphasis added). As a direct and proximate result of this suppression, Wilkins was wrongfully convicted of felony murder and incarcerated for over 13 years, whereas he was ultimately convicted of the lesser charge of involuntary manslaughter.

Vandiver, as an OCDA investigator, was responsible for providing any exculpatory information to the prosecution so that it could be in turn provided to Wilkins' defense team. As alleged in Wilkins' FAC, Heckenkemper told Vandiver that his report had been changed and that he did not agree with the PCF that Sgt. Morrison put in the altered CHP report. Vandiver responded, "I don't want to hear about it, I would have to testify to it," or words to that effect. (FAC at ¶ 23). Wilkins was unaware of the initial CHP traffic reports and their exculpatory

opinions until long after his first trial conviction. In other words, Vandiver knew that the evidence being presented was false and fabricated, and yet he did not provide this exculpatory information to the OCDA prosecutors, the criminal court, to Wilkins, or to Wilkins' criminal attorney. The fabricated CHP traffic collision reports that were presented at the first trial were used to convict Wilkins of first-degree murder under the felony-murder rule.

In its order granting in part and denying in part Defendants' motions to dismiss (Dkt. 54), this Court stated as follows with respect to Wilkins' *Brady* claims against Vandiver:

> The Court is not persuaded by Vandiver's arguments. . . *Brady* asks whether the evidence is favorable to the accused, whether the evidence was suppressed, and whether the evidence is material such that its suppression prejudiced the defendant. *Hovey*, 458 F.3d at 916. Vandiver's role in the creation of the *Brady* evidence is separate and apart from his obligation to disclose that evidence to the prosecution once he became aware of it. What is more, Vandiver does not contest that the information regarding the traffic collision reports is in fact *Brady* evidence. Thus, this argument side-steps the key inquiry under *Brady*.
> Likewise, the Court is not persuaded that CHP Chief Beeuswaert's disclosure of the *Brady* evidence to the prosecutor at trial relieves Vandiver's *Brady* obligations as an OCDA investigator to inform the prosecution of potentially exculpatory evidence, particularly when it seems he was aware of this information well in advance of trial. [ ] *Brady* imposes a duty on police officers and investigators to "disclose exculpatory evidence to the prosecutor." *Tennison*, 570 F.3d at 1090. Vandiver was an investigator in possession of information related to exculpatory information. What is more, Vandiver cites no case supporting that this would otherwise relieve him of his *Brady* obligations.
> Accordingly, the Court declines to dismiss Wilkins's *Brady* claim and *Brady* conspiracy claim against Vandiver at this stage.

Plaintiff contends that this Court should once again decline to dismiss Wilkins's *Brady* claim and *Brady* conspiracy claim against Vandiver. Vandiver is

not entitled to qualified immunity on Wilkins' *Brady* claims as discussed in detail below.

## B. Wilkins Has Cognizable Claims Against Vandiver for Both Fabrication of Evidence and Conspiracy to Fabricate of Evidence

Plaintiff contends that in his FAC, he has properly pled his claims against Vandiver for fabrication of evidence and conspiracy to interfere with Wilkins' civil rights by fabrication of evidence/false evidence violations under 42. U.S.C. § 1983. Civil rights actions are governed by the pleading requirements of FRCP, Rule 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). To assert a claim under 42 U.S.C. § 1983, Wilkins has an obligation to put Vandiver and the court on notice of what claims are raised in his FAC by properly alleging that he has been deprived a federal statutory or constitutional right by a person acting under color of state or local law. *Paratt v. Taylor*, 451 U.S. 527, 535 (1981). In his FAC, Wilkins has sufficiently put Vandiver and the court on notice of his claims against Vandiver pursuant to FRCP, Rule 8.

Under *Devereaux*, dismissal is improper where a plaintiff alleges that defendants deliberately fabricated evidence that was used to criminally charge, prosecute, or convict plaintiff or where the defendant (as Vandiver did here) continued his investigation of the plaintiff despite the fact that he knew or should have known that he was innocent. *Devereaux v. Abbey*, 263 F.3d 1080, 1074-76 (9th Cir. 2001). Federal circuit courts widely recognize that the use of manufactured evidence to obtain a conviction supports § 1983 liability for violation of the right to a fair trial, which is secured by the Due Process Clause of the Fourteenth Amendment. *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004); *Geter v. Fortenberry*, 849 F.3d 1550, 1559 (5th Cir. 1988).

Generally, when ruling on a 12(b)(6) motion to dismiss, the court may not consider evidence outside of the pleadings. *See Ritchie*, 342 F.3d at 907–08. Vandiver's request for judicial notice filed concurrently with his motion to dismiss

proposes that this court use the prior criminal court filings in a way that is prohibited. When a court takes judicial notice of another court's filings, it does so not for the truth of the facts recited therein, but for the existence of the opinion and its legal effect. *See, e.g.*, *S.B. by & through Kristina B.*, 327 F. Supp. 3d at 1229 n.1. Vandiver lifts factual content from the prior criminal court filings, combines them with the allegations in Wilkins' FAC, and asks this Court to dismiss Wilkins' FAC based on that factual content. By doing so, Vandiver asks this Court to go beyond recognizing the existence and legal effect of the prior criminal court filings, and to consider the facts therein in ruling on Vandiver's motion. Vandiver's use of extrinsic evidence to argue for dismissal of Plaintiff's claims improperly attempts to turn Vandiver's motion to dismiss into a premature and improperly noticed motion for summary judgment. Plaintiff contends that this Court should thus deny Vandiver's request for judicial notice.

   Plaintiff's factual allegations regarding Vandiver's role in the fabrication of evidence, which must be accepted as true where Plaintiff is the non-moving party, are sufficiently set forth in paragraphs 21, 23, 45, 46, 48, 49, 52, 61, 62, 64, 65, 66, and 67 of Plaintiff's FAC. Plaintiff alleges in his FAC that as part of the OCDA team, Vandiver worked with Morrison to ensure that the CHP report was altered, remained altered, and was presented as evidence to pursue a felony murder charge against Wilkins. As alleged in paragraph 21 of Plaintiff's FAC, shortly after the collisions that occurred on July 7, 2006, Heckenkemper wrote a report that identified the PCF of the second collision relating to the stove. Heckenkemper opined that the driver involved in the second collision, R. Howard, was at fault, concluding that R. Howard was driving too fast for the conditions. Heckenkemper submitted his report, and a reviewing officer in the CHP Accident Investigation Unit ("AIU") signed off on the report. After Heckenkemper's report was finalized and approved by the AIU, Morrison changed Heckenkemper's report. Morrison told Heckenkemper that he had destroyed his report and changed the PCF to "other than

driver" because Wilkins was being charged with felony murder, and law enforcement wanted the PCFs in the three collisions to be consistent. Heckenkemper did not approve or agree with the changes made to his report. Additionally, CHP Officer Scott Taylor, who was working in AIU at the time of the fatality involving the stove, recalled that both Heckenkemper and CHP Officer Bernardin wrote reports and that the PCFs were changed. Taylor recalled that Morrison rewrote Heckenkemper's report when Heckenkemper was on vacation. Taylor indicated that it was possible that the OCDA's office (which would include Vandiver) initiated that change in the PCF.

      On Plaintiff's allegations, Heckenkemper specifically told Vandiver about his initial PCF—which did not attribute the fatal collision to Wilkins—and told Vandiver about his investigation. During Wilkins' criminal trial in April of 2008, Heckenkemper met with Vandiver at the collision site to pinpoint the location of the stove before he moved it to the shoulder. Heckenkemper told Vandiver that his report and his opinions had been changed and he did not agree with Morrison's PCF. Heckenkemper told Vandiver that his CHP traffic report was destroyed, and that he wanted to give the OCDA's office an opportunity to hear about it before they presented the fabricated evidence during trial. Heckenkemper assumed he was speaking to the OCDA's office when he spoke to Vandiver about the change in the report. Heckenkemper told Vandiver that Morrison had destroyed Heckenkemper's report and changed the PCF to "other than driver" for the express purpose of fabricating a basis to charge Wilkins with felony murder. Vandiver responded, "I don't want to hear about it; I would have to testify to it," or words to that effect. This statement by Vandiver shows that Vandiver was in concert with Morrison to work together to falsify evidence, fabricate evidence, conceal exculpatory evidence, and continue to investigate Wilkins for felony murder even though Vandiver knew that Wilkins was not the PCF in the fatal collision. Based at least in part on the information that Heckenkemper provided to Vandiver, Vandiver knew that there

was no basis to charge Wilkins with felony murder other than the false and fabricated CHP report that altered the PCF.

CHP Sergeant Jay Gentile indicated that Vandiver and the OCDA's office was involved in changing the PCF and colluded with the CFP in order to make sure that former Riverside County sheriff's deputy Piquette "looked better, as opposed to having the victim [Piquette] look like he's the bad guy for, uh, driving too fast," in other words, to form the basis of a felony murder charge. Morrison told Heckenkemper that they didn't think that they could get a felony murder conviction against Wilkins if the deputy was found to be at fault, and that because the collision Heckenkemper reported was under the same circumstances as the fatal collision, the PCF in Heckenkemper's report needed to be changed. Based on these statements by Taylor, Heckenkemper, Bernardin, and Gentile informing Vandiver that the PCF was changed—without approval—solely for the purpose of pursuing a felony murder charge against Wilkins—Vandiver knew or should have known that Wilkins was factually innocent of felony murder. (*See* FAC at ¶ 45). According to CHP Sergeant Timothy Malone, he or someone in his unit also contacted the OCDA's office regarding the CHP's investigation into the changed reports, and that when IA is looking into the accuracy of the case, it would be a normal procedure to contact the DA's office and let them know. The OCDA doubled down by having Vandiver serve as a rebuttal expert where Vandiver provided perjured testimony to the jury and claim there was no evidence that Piquette was speeding or otherwise driving unsafely prior to the fatal collision. (*Id.* at ¶ 48).

Further, Plaintiff has alleged facts sufficient to show that Defendants Morrison and Vandiver conspired to deprive Wilkins of his right not to have false evidence used against him in order to falsely and wrongfully secure a conviction for first-degree murder. "Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, 'so long as there is a possibility that the jury can infer from the circumstances (that the alleged

conspirators) had a 'meeting of the minds' and thus reached an understanding' to achieve the conspiracy's objectives. *Hernandez v. City of Napa*, 781 F. Supp. 2d 985, 997 (N.D. Ca. 2011) (*Mendocino Enviro. Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)).

As adequately pled in Plaintiff's FAC, Vandiver, acting under color of law as an OCDA investigator, conspired to wrongfully pursue the criminal investigation of Wilkins, obtain indictments against him, and prosecute him for first-degree murder by failing to correct the fabrication and concealment of evidence, which set in motion a reasonably foreseeable chain of events that led to the presentation of false and fabricated evidence, faulty jury instructions, the unwarranted use of the felony murder rule, and Wilkins' first-degree murder conviction and subsequent 13-year incarceration. Pursuant to FRCP, Rule 8, Plaintiff has adequately alleged that Vandiver's conduct was part of an agreement or meeting of the minds to violate Wilkins' constitutional rights. Additionally, Plaintiff has alleged that, in part due to Vandiver's failure to inform the prosecutors and the criminal court that the evidence being presented was false and fabricated, Wilkins would not have been convicted of first-degree murder. The first-degree murder conviction violated Wilkins' constitutional rights because Wilkins was incarcerated for first-degree murder based on false and fabricated evidence. But for the first trial resulting in the first-degree murder conviction, Wilkins would not have been incarcerated for 13 years for what was ultimately a four-year sentence.

Wilkins has made more than merely "conclusory allegations," and it cannot be said that "it appears beyond doubt that [Wilkins] can prove no set of facts in support of his claim which would entitle him to relief." *Doe*, 419 F.3d at 1062. Therefore, Vandiver's motion as to Plaintiff's claims for fabrication of evidence and conspiracy to fabricate evidence against Vandiver must be denied.

//

### C. <u>Vandiver Violated Clearly Established Law and Is Therefore Not Entitled to Qualified Immunity</u>

Qualified immunity is an affirmative defense, and the burden of proving the defense lies with the official asserting it. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). A qualified immunity defense fails where a reasonable official would have known his actions would violate a constitutional right that was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 239-41 (2009). "[A] right is clearly established if the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Directly on-point authority is not necessary to establish that a right has been clearly established, especially where the existence of such a right is obvious. *Id*.; *Headwaters Forest Defense v. County of Humbolt*, 276 F.3d 1125, 1131 (9th Cir. 2002). Nor is it required that prior cases even be "materially" or "fundamentally" similar. *Hope v. Pelzer*, 536 U.S. 730, 740-74 (2002)). Additionally, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact). Although this Court must accept Plaintiff's allegations in the FAC as true for the purpose of ruling on Vandiver's motion to dismiss, Vandiver appears to dispute Plaintiff's factual allegations. Vandiver is not entitled to qualified immunity because there are disputed issues of fact, and the law was clearly established.

It was clearly established by 2006 that government actors are not allowed to destroy, fabricate, and fail to correct the destruction and fabrication of evidence in an effort to secure a conviction. There is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1074-77; *see also Gantt v. City of L.A.*, 717 F.3d 702, 707 (9th Cir. 2013) (recognizing

that this right is considered "clearly established" in the Ninth Circuit); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012). Here, as alleged in Plaintiffs' Complaint and above, Vandiver failed to correct the destruction and fabrication of the CHP reports, which was part of a concerted effort by Defendants to secure a first-degree murder conviction against Wilkins. Vandiver was on sufficient notice to know that falsifying evidence violates "clearly established law."

*Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), seminal and exceedingly familiar Supreme Court cases which clearly prohibit the violations at issue here, were decided decades before Vandiver's actions in this case. *See also Tennison v. City & County of San Francisco*, 570 F.3d 1078, at 1086-1087 (9th Cir. 2009) (citing *Newsome v. McCabe*, 256 F.3d 747, 752-53 (7th Cir. 2001) for the proposition "that it was clearly established in 1979 and 1980 that police could not withhold exculpatory information []."). Additionally, *Brady, Napue*, and *Giglio* put public officials on notice that they could not suppress exculpatory facts relating to false evidence. Failure to correct false evidence at trial likewise results in the same deliberate deception of a court and jury as when false evidence is knowingly presented. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). As these cases make absolutely clear, fabrication and suppression of exculpatory evidence such as that engaged in by Vandiver form the basis for a claim of constitutional deprivation.

Once Plaintiff carries his initial burden to show the law was clearly established, Defendants must carry the burden of proving their conduct was nevertheless "reasonable under the applicable standards even though it might have violated [Plaintiff's] constitutional rights." *Houghton v. South*, 975 F.2d 1532, 1534 (9th Cir. 1992) (citing *Benigni v. City of Hemet*, 879 F.2d at 473, 480 (9th Cir. 1988)). Here, Vandiver intentionally suppressed evidence pertaining to the fabricated CHP traffic collision reports in concert with the OCDA prosecutors and continued to investigate Wilkins for first-degree murder, in order to bolster the

charge of first-degree murder. The evidence and Plaintiff's allegations further indicate that the change in PCF may have been initiated by the OCDA's office, which would include Vandiver. Such acts leap over negligence and suggest purposeful wrongdoing in an effort to secure a conviction of Wilkins. Accordingly, Vandiver is not entitled to qualified immunity.

## IV. CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests an order denying Defendant Vandiver's motion to dismiss Plaintiff's FAC.

DATED: April 22, 2022          LAW OFFICES OF DALE K. GALIPO

*/s/ Dale K. Galipo*
Dale K. Galipo
*Attorneys for Plaintiffs*